UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL BURBRIDGE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ADTRAN, INC., THOMAS R. STANTON, MICHAEL FOLIANO, and ROGER D. SHANNON,<br><br>　　　　　　　　　　　Defendants. | Civil Action No. 1:19-cv-09619<br><br>CLASS ACTION |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF REZA ADHAMI, PH.D. TO APPOINT LEAD PLAINTIFF
AND APPROVE SELECTION OF LEAD COUNSEL**

## I.   INTRODUCTION

After two rounds of briefing, it is not credibly disputed that Reza Adhami, Ph.D. ("Dr. Adhami") suffered the greatest out-of-pocket loss of any lead plaintiff movant on his investments in ADTRAN Inc. securities during the Class Period.  Dr. Adhami's computer engineering background and selection of highly qualified and experienced trial counsel further underscore his fitness.  In short, Dr. Adhami is the presumptive lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

In his effort to rebut that presumption, competing movant Michael Burbridge ("Mr. Burbridge") – an unknown individual who has provided no information about himself – offers not proof, but an inaccurate and overly restrictive interpretation of the facts and legal theories at issue, which is altogether disadvantageous to class members.  Specifically, Mr. Burbridge proclaims that Dr. Adhami suffered no compensable loss and is subject to a loss causation defense because Dr. Adhami purportedly "sold all his shares without holding any shares through a corrective disclosure and associated stock price decline."  ECF No. 22 at 1.  Mr. Burbridge is wrong.

In truth, Dr. Adhami, who purchased 3,000 ADTRAN shares on July 18, 2019 as the news of ADTRAN's first disclosure was beginning to come out to the market and the market digested the news.  Dr. Adhami's first 1,000 shares were purchased at $15.40—near the opening price of $15.96 at the beginning of the trading session.  His second purchase, also early in the session, was at $14.03.  His third was at $12.74, near the close of $12.13.  *Compare* Declaration of Reed Kathrein ("Kathrein Decl."), Ex. A, ADTRAN Stock Prices 7/17-7/22/2019.  During that day, if one assumes that the proper non-inflated price of the shares was $12.13 (the closing price to which the market adjusted after digesting the news), Dr. Adhami lost $3,830 on his first

purchase, $1,900 on his second purchase, and $610 on his third purchase for a total loss of $6,340.00.

Additionally, more news came out over the 18th through 22nd of July, as analysts searched for clues in the industry as to what was going on in truth and began to reveal their findings.  During this period ADTRAN's stock price declined as much as an additional $0.93.  On July 23, 2019, Dr. Adhami sold these 3,000 ADTRAN shares for $11.26 for an additional loss of $870 *after* the multiple analysts covering the Company identified the international Tier 1 customer (Germany's Deutsche Telekom) contributing to ADTRAN's weak Q3 2019 guidance, and reported perceived slowdowns in demand at both Deutsche Telekom and ADTRAN's Tier 1 Latin American customer Telmex, which news was directly at odds with management's positive statements to investors at ADTRAN's July 18, 2019 earnings conference.  *Cf*. Complaint, ECF No. 1 at ¶ 27; "Deutsche Telekom Bugaboo – Hold Rating," by George C. Notter of Jeffries Equity Research (July 18, 2019), Kathrein Decl. Ex. B; "With DT Pause and E&O Review, ADTN Has Become a Show-Me Story, but Sell Off Was Overdone," Michael E Genovese of MKM Partners (July 19, 2019).  Kathrein Decl. Ex. C.  "Deutsch Telekom Cuts Adtran Spending After 5G Spectrum Splurge" UBM India Pvt Ltd. (July 22, 2019).  Kathrein Decl. Ex. D.  These researched analyst reports and news commentary partially disclosed the Company's mounting problems with its large carrier customers and caused a precipitous decline in the Company's stock price over the next three trading days.  Kathrein Decl. Ex. E.

In total, Dr. Adhami's *Dura* losses during this period for the first 3,000 shares he purchased as these disclosures came out was $7, 210.00.  Using this loss causation methodology, Burbridge only claims $1,660.65 in losses.  So too, following Burbridge's new LAX factor analysis, Dr. Adhami purchased 3,000 shares spending $42,170.00 during this short period,

- 2 -

compared to Burbridge who purchased only 1,000 shares spending only $13,150 during this period.  Kathrein Decl. Ex. F, Comparison Shares Purchased and Amount Spent July 18, 2019 to July 22, 2019.

These calculations ignore that unlike Burbridge, Dr. Adhami also purchased an additional 3,000 shares after July 18th and lost an additional approximate $2,000.  ECF No. 16-3, Dr. Adhami loss calculations.  The Complaint alleges an additional disclosure on August 12th.  *Cf*. Complaint, ECF No. 1 at ¶ 28.  While this first quickly-drafted complaint fails to plead it, over the next three days the stock drops approximately $0.50, or about 5%.  By the time Dr. Adhami sold his last shares the stock had fallen another $0.50.

Accordingly, there simply is not a loss causation concern and Dr. Adhami has suffered compensable damages.  As such, Dr. Adhami's motion should be granted in full.

## II.    ARGUMENT

### A.    The Presumption in Dr. Adhami's Favor Has Not Been Rebutted

"The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) either has filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23."  *Bang v. Acura Pharm., Inc.,* No. 1:10-cv-05757, 2011 WL 91099, at *2 & n.2 (N.D. Ill. Jan. 11, 2011).  "This presumption may be rebutted if there is proof that the presumptively most adequate lead plaintiff either will not fairly and adequately protect the class' interests or is subject to some unique defense that renders the lead plaintiff incapable of adequately representing the class."  *Id*. at *2.  "Mere innuendo and inferences will not suffice to support allegations of atypicality, conflict of interest or unique defenses."  *In re SemGroup Energy Partners, L.P., Sec. Litig*., No. 4:08-cv-00425-GKF-FHM, 2008 WL

4826318, at *2 (N.D. Okla. Oct. 27, 2008).[1]  Rather, "'exacting proof' is needed to rebut the presumption." *Murphy v. JBS S.A.*, No. 1:17-cv-03084-ILG-RER, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017).

**B.     The Court Should Decline Mr. Burbridge's Invitation to Shrink Dr. Adhami's Loss By Switching Methods and Ignoring Partial Disclosure**

"While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005).  More specifically, "courts look to the plaintiff with the greatest net loss during the proposed class period." *Bang*, 2011 WL 91099, at *2.  In claiming their financial interest, each movant emphasized the out-of-pocket losses (i.e., net loss) they suffered.  As reflected in the chart below, Dr. Adhami incurred a net loss of over $9,840 on his investment in ADTRAN securities during the Class Period – nearly 3 times greater than the losses claimed by Mr. Burbridge.

| Movant | Reported Loss |
| --- | --- |
| Reza Adhami, Ph.D. | $9,840.00 |
| Michael Burbridge | $3,980.50 |

See ECF Nos. 16-2 and 13-3.

---

[1] *See also OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("The [competing movant] must produce more than speculation to rebut the presumption. . . .  Mere speculation about a unique defense does not meet this standard."); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the presumptive lead plaintiff] would be uniquely subject.").

Recognizing that he did not suffer the greatest loss, Mr. Burbridge now attempts to artificially deflate Dr. Adhami's loss by essentially contending that compensable damages, *as framed by a skeletal initial complaint that he and his counsel filed*, should be the metric that dictates financial interest for lead plaintiff purposes.  Mr. Burbridge's pivot from loss to compensable damages – solely in opposition to Dr. Adhami's motion – fails for several reasons.

First, Mr. Burbridge's opening papers made no reference to the damage methodology he is currently advancing where he excludes some of his own and all of Dr. Adhami's trades to suit his new theories.  ECF No. 12.  Rather, Mr. Burbridge simply asserted his financial interest based on the *Lax* factors and emphasized his net losses.  ECF No. 13-3 at 2.  "Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did [Mr. Burbridge] argue that the more appropriate measure of greatest financial stake was the [*Dura*-eligible 'compensable damages'] methodology." *Bodri v. GoPro*, Inc., No. 4:16-cv-00232-JST, 2016 WL 1718217, at \*3 (N.D. Cal. Apr. 28, 2016) (noting that movants focused "exclusively" on "losses" in their motions and rejecting attempt to switch metrics).  "This fact alone counsels in favor of adopting the [original] methodology, as opposed to the [*Dura* loss] methodology." *Id*.; *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp*., No. 1:13-cv-02111, 2013 WL 3934243, at \*3 (N.D. Ill. July 30, 2013) (recognizing that "[i]t was only after Retirement Funds discovered that it did not have the largest loss amount when compared to other Plaintiffs that Retirement changed its position in later filings as to the proper loss calculation, seeking to exclude pre-June 7, 2012 losses" and ultimately finding that the "record reflects that Central States has the largest potential LIFO

- 5 -

losses").[2]

Regardless, even if the Court considers Mr. Burbridge's argument, his new compensable damages methodology does not result in Mr. Burbridge leapfrogging Dr. Adhami into the presumptive lead plaintiff position.  In fact, as shown in the introduction above, if the Court accepts the *Dura* methodology as the appropriate yardstick for assessing the movants' financial interest, Dr. Adhami would still prevail.

Any attempt by Mr. Burbridge to discredit or nullify the drop experienced on the 18th as the market digested the news and the analysts' July 18-22, 2019 additional disclosures by claiming it is outside of the pleadings fails.  *See, e.g.*, *In re VimpelCom, Ltd.*, No. 1:15-cv-08672-ALC-OTW, 2016 WL 5390902, at *3 (S.D.N.Y. Sept. 26, 2016) (denying motion for reconsideration of order appointing movant that sold shares after an early alleged partial disclosure where movant's "response to the motion for reconsideration . . . alleges that stock prices dropped following the March disclosures"); *Juliar v. Sunopta Inc.*, No. 1:08-cv-00933-PAC, 2009 WL 1955237, at *2 (crediting investor's "evidence" in reply brief of "substantial leakage" of misconduct before the first alleged disclosure and finding investor was not subject to loss causation or in-and-out challenge).

To the extent courts that have refused to appoint a lead plaintiff who sold following a

---

[2] *See also Cook v. Allergn PLC*, No. 1:18-cv-12089-CM, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) ("The fact that DeKalb used the same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of Dura on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted."); *Robb v. Fitbit Inc.*, No. 3:16-cv-00151-SI, 2016 WL 2654351, at *5 n.8 (N.D. Cal. May 10, 2016) (stating that court was "not persuaded" by one movant's "alternative loss calculations" based on Dura that were raised in "its opposition and reply briefs" in part because "the movants disagree as to whether this calculation method is valid").

corrective disclosure, they do so only where there is little evidence of partial corrective disclosures reaching investors. *See, e.g., Bensley v. FalconStor Software, Inc.,* 277 F.R.D. 231, 241 (E.D.N.Y.2011) ("Having considered the parties' respective arguments, the Court finds that the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation."). Courts who have refrained from appointing such lead plaintiffs have done so in the complete absence of partial corrective disclosures or in light of speculative or highly questionable partial disclosures. *See id.* ("they have made no allegation that the public was aware, prior to the [final] disclosure, that the reason the Company was not making its projected revenues was because of the alleged fraud"); *In re McKesson HBOC, Inc. Sec. Litig.,* 97 F.Supp.2d 993, 998 (N.D.Cal.1999) (where there was "little evidence of partial corrective disclosures reaching investors," the court declined to count losses by 'in-and-out' traders when determining the plaintiff with the greatest financial interest in the litigation).

On the other hand, where there are "several and plausible partial disclosures" prior to the movant's sales, Courts will appoint an in-and-out trader. *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 115 (E.D.N.Y. 2012) (rejecting argument in-and-out trader not eligible to be appointed); *Montoya v. Mamma.com Inc.,* No. 1:05-cv-02313-HB, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (plaintiffs need only allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security," and loss causation does not require *full* disclosure and can be established by *partial* disclosure during the class period which causes the price of shares to decline citing *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341 (2005), and *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161, 174 (2d Cir.2005). *See also Christian v. BT Grp. PLC,* No. 2:17-CV-00497-KM-JBC, 2017 WL

3705804, at *6 (D.N.J. Aug. 28, 2017) (Appointing an it-and-out seller where sales where the "allegations present a fairly straightforward (and not atypical) case of progressive revelation of a problem that turned out to be more serious than first believed" and refusing to speculate on other causes of the drop.).

Finally, should the Court deem necessary Dr. Adhami will endeavor to include an additional class representative who held shares of ADTRAN through the final disclosure in an amended complaint to aid in the Lead Plaintiff in representing the class.  *Cf. Christian v. BT Grp. PLC*, 2017 WL 3705804, at *8 *citing In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 286 (S.D.N.Y. 2003) ("The PSLRA does not prohibit the addition of named plaintiffs to aid the Lead Plaintiff in representing the class.").  Assuming more is learned about Burbridge that establishes that he would be an adequate representative, Dr. Adhami would be willing to include him if he so wished.

### III.    CONCLUSION

For the foregoing reasons, Dr. Adhami respectfully requests that the Court: (1) appoint Dr. Adhami as Lead Plaintiff pursuant to the PSLRA; (2) approve Dr. Adhami's selection of Hagens Berman to serve as Lead Counsel for the putative/proposed Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: January 6, 2019                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Jason A. Zweig*
      JASON A. ZWEIG, JZ-8107

555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980

jasonz@hbsslaw.com

Reed R. Kathrein
Lucas E. Gilmore
Danielle Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff*
*Reza Adhami, Ph.D.*

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Jason A. Zweig*
JASON A. ZWEIG